MICHAEL J. FLYNN vs. CHURCH OF SCIENTOLOGY OF
CALIFORNIA, INC., & others.[1]

Suffolk.   October 16, 1984. — December 4, 1984.

Present: GREANEY, C.J., DREBEN, & FINE, JJ.

*Practice, Civil,* Dismissal.

Where the case against one of several defendants in a civil action had been
  terminated by the plaintiff's timely filing of a notice of voluntary dismis-
  sal under Mass.R.Civ.P. 41(a)(1), 365 Mass. 803 (1974), it was error
  for a judge, in ruling on a subsequent motion to dismiss, to include that
  defendant in an order dismissing the action with prejudice. [64-65]
Where the plaintiff in a civil action had moved for voluntary dismissal under
  Mass.R.Civ.P. 41(a)(2), 365 Mass. 803 (1974), it was error for the
  judge hearing the motion to order dismissal of the action with prejudice
  before first affording the plaintiff an opportunity to withdraw his motion
  to dismiss, when he sought to do so upon the judge's announcement in
  open court of his ruling on the motion. [66-67]

CIVIL ACTION commenced in the Superior Court Department
on April 9, 1982.

A motion to dismiss was heard by *Hiller B. Zobel,* J.

*Harvey A. Silverglate* for Church of Scientology of Califor-
nia, Inc., & others.

*David M. Banash* for the plaintiff.

*Charles W. Rankin* for Kevin Tighe.

FINE, J. On April 9, 1982, Michael J. Flynn, an attorney,
brought an action against the Church of Scientology of Califor-
nia, Inc., The Church of Scientology of Boston, Inc., and
three individuals, each of whom is alleged to have been as-
sociated with the Church of Scientology of Boston, Inc., either
as a staff member or as an officer. Mr. Flynn claims that the
defendants were responsible for the unlawful taking of docu-

---

[1] Church of Scientology of Boston, Inc., Kevin Tighe, Robert Johnson,
and David Aden.

ments from his law offices in Boston and from a dumpster located outside his office. He alleges that these acts occurred over a period from December of 1979 until the fall of 1981, and that, among the documents taken, were confidential client communications. He sought injunctive relief, compensatory damages, and an award of multiple damages and attorney's fees under G. L. c. 93A.

On October 12, 1983, a judge of the Superior Court dismissed the lawsuit *with prejudice* following a hearing on Mr. Flynn's motion for voluntary dismissal under Mass.R.Civ.P. 41(a)(2), 365 Mass. 803 (1974).[2] The question posed by Mr. Flynn's appeal in this case is whether that action was proper. In order to answer it, we must examine the history of the particular litigation, as well as other material which was before the judge when he acted on the plaintiff's motion. Although a considerable amount of other material has been brought to our attention by the parties, we focus our attention exclusively on that material which was before the judge when he rendered his decision. Because the language of the sections of the rules with which we are concerned is almost identical to the equivalent sections of the Federal Rules of Civil Procedure, we look for guidance to Federal law in interpreting those rules. *Rollins Environmental Servs., Inc.* v. *Superior Court,* 368 Mass. 174, 179-180 (1975).

The following is a summary of the relevant events that occurred in the case after the complaint was filed and prior to the hearing. On April 13, 1982, a hearing was held on the plaintiff's motion for a preliminary injunction, at which all parties except the Church of Scientology of California, Inc., were represented. There was a discussion of proceedings which had taken place in a case pending in the United States District Court in Boston, *Van Schaick* v. *Church of Scientology of California, Inc.,* No. 79-2491-G (D. Mass. filed Dec. 13,

---

[2] The rule provides: "*By Order of Court.* Except as provided in paragraph (1) of this subdivision (a) [voluntary dismissal by plaintiff by filing a timely notice of dismissal or by filing a stipulation of all parties], an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . ."

1979), and of certain orders which had been entered in that case relating to the documents allegedly taken from Mr. Flynn's office or trash, which were the same documents as those referred to in the instant case.[3] Perhaps because those orders provide some protection to Mr. Flynn as to the use that could be made of the documents, on the day it was heard the motion for preliminary injunction was denied. It was again denied after an interlocutory review by a single justice of this court (pursuant to G. L. c. 231, § 118, first par.) a few days later. On May 10, 1982, all parties except the Church of Scientology of California, Inc., filed answers. On May 17, 1982, Mr. Flynn filed a demand for jury trial. On September 12, 1983, Mr. Flynn filed a notice, dated August 29, 1983, of voluntary dismissal as to the Church of Scientology of California, Inc. On September 19 and 22, 1983, respectively, the defendants gave notice that they would take the depositions of Mr. Flynn on September 29, 1983, and of four other individuals on various other dates. On September 29, 1983, Mr. Flynn filed his motion to dismiss and also a motion to stay discovery pending resolution of the motion to dismiss. The motion to stay discovery was allowed. The motion to dismiss was heard and allowed *with prejudice* on October 12, 1983, all parties having been represented at the hearing except the Church of Scientology of California, Inc.

---

[3] The complaint in the *Van Schaick* case involved, inter alia, allegations of fraud, unrelated to the alleged theft of documents. Mr. Flynn, on behalf of the plaintiff in that case, filed a "Motion for a Temporary Restraining Order, for a Preliminary Injunction for Return of Stolen Property and for an Evidentiary Hearing." After hearing, an order was entered on September 14, 1981, whereby copies of any documents taken were to be furnished to Mr. Flynn and, until further order of the court, the defendants in the case were enjoined from delivering, transferring, distributing, disseminating, or destroying the documents. Further motions were filed, and on April 5, 1982, after a hearing on "Defendants' Request for Modification of Order," during which hearing counsel for the defendants agreed to return certain documents to Mr. Flynn, a conditional order was entered vacating the order of September 14, 1981, effective ten days after (1) delivery to Mr. Flynn of all the subject documents in the possession of the defendants' attorney and (2) the filing of certain representations by defendants' counsel, including a representation that the defendants would not use the documents for harassment purposes. Also included was an order that the Church of Scientology of California, Inc., produce copies of the documents taken.

The judge at the dismissal hearing had before him three affidavits, one from Mr. Flynn, one from Eric D. Blumenson, an attorney representing the Church of Scientology of Boston, Inc., and one from Harvey A. Silverglate, an attorney representing the Church of Scientology of Boston, Inc., the Church of Scientology of California, Inc., and some of the individual defendants. A considerable portion of all of the affidavits from both sides contained cross-charges of harassment and abuse of the judicial process. Mr. Flynn's affidavit referred, in addition, to the orders which had been entered by the United States District Court in the *Van Schaick* litigation and to a complaint in a case filed in the United States District Court on his behalf on September 7, 1983. The complaint in that case (*Flynn* v. *Hubbard,* No. 83-2642-C [D. Mass.]), alleges that Hubbard[4] and his agents are engaged in a broad conspiracy to "destroy" Mr. Flynn. Numerous wrongful acts are alleged to have been committed, including the same acts involving documents taken from Mr. Flynn's office and trash which form the basis of the instant suit. The affidavit of Mr. Blumenson, on the other hand, relates the difficulties encountered in the attempt to schedule Mr. Flynn's deposition and refers to the age and history of the case. In addition, Mr. Blumenson speculates as to Mr. Flynn's "hit and run" strategy, characterized by the filing of numerous lawsuits for purposes, he says, other than the receipt of legal redress. He asserts further that Mr. Flynn has shown no reason why the allegations made in this lawsuit should be tried in a different forum, and he states that, if the motion to dismiss *without prejudice* is allowed, his client's name will remain tarnished, Hubbard being the only named defendant in Mr. Flynn's Federal District Court case. Mr. Silverglate's affidavit refers to correspondence from Mr. Flynn seeking settlement of pending cases against the various church organizations and threatening to file numerous additional lawsuits if settlement is not reached. Mr. Silverglate refers to an

---

[4] Lafayette Ronald Hubbard, also known as L. Ronald Hubbard, according to allegations in the complaint last resided in Hemet, California, and is the "founder, controller, principal and absolute authority over the Scientology organizations and individuals."

alleged scheme on the part of Mr. Flynn for development of additional litigation against the various church entities and alleges that Mr. Flynn's general litigation strategy is to file duplicative cases and dismiss them whenever faced with adverse rulings. The affidavit refers to the expense incurred in defending the litigation brought against the church. Mr. Silverglate also describes the proceedings in the *Van Schaick* litigation regarding the documents. And, finally, he speculates that in the Federal District Court litigation against Hubbard Mr. Flynn's strategy is to obtain a default judgment against Hubbard, whom he expects not to appear, and then to collect damages from the parties who are the defendants in this litigation.

At the outset of the hearing, the judge outlined three possible resolutions of the motion to dismiss: "dismissal with prejudice; denial of the motion to dismiss; and denial of the motion to dismiss with a stay of the Federal court proceedings" against Hubbard. Mr. Flynn's attorney declined to accept any of the three alternatives and proceeded to argue against them and in support of the motion to dismiss *without prejudice*. In the course of the argument, an offer was made on Mr. Flynn's behalf that he bind himself by an agreement not to sue the defendants in this case on these claims and to pay just costs. Mr. Flynn's attorney stated that a dismissal *without prejudice* was sought because of fear that a dismissal *with prejudice* would preclude him from litigating certain issues in the Federal case against Hubbard. He stated further that his client had no interest in pursuing the instant case at this time. Counsel for the defendants only reiterated their position that Mr. Flynn would seek to recover damages from the defendants in this case should the Federal case against Hubbard be won by default. Without hearing further from counsel for any of the defendants, the judge announced his decision from the bench to allow the motion *with prejudice*. Immediately thereafter, Mr. Flynn's attorney sought to withdraw the motion to dismiss but was not permitted to do so. Further material was filed by the plaintiff with the court after the ruling, and a request for reconsideration was filed and denied.

1. The position of the Church of Scientology of California, Inc., is different from that of the other defendants. The case against that party was effectively terminated on September 12, 1983, as a result of the filing by the plaintiff of a notice of dismissal under Massachusetts Rule of Civil Procedure 41(a)(1), 365 Mass. 803 (1974), which allows dismissal "without order of court . . . by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs . . . ." No answer or motion for summary judgment had been served on the plaintiff by the Church of Scientology of California, Inc., on or before that date. In these circumstances, the plaintiff had an absolute right to dismiss that party *without prejudice*. There was no occasion for the exercise of discretion, and no conditions could be placed on the exercise of that right. *American Cyanamid Co.* v. *McGhee*, 317 F.2d 295, 297 (5th Cir. 1963). *D.C. Electronics, Inc.* v. *Nartron Corp.*, 511 F.2d 294 (6th Cir. 1975). This is so even if the party being dismissed is not the only defendant in the case and even if one or more of the other defendants had filed answers. *Plains Growers, Inc.* v. *Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 254-255 (5th Cir. 1973). *Terry* v. *Pearlman*, 42 F.R.D. 335, 337 (D. Mass. 1967). Smith & Zobel, Rules Practice § 41.3, at 48 (1977).[5] The particular status of the Church of Scientology of California, Inc., with respect to the notice of dismissal was not addressed by the judge or by counsel at the hearing or in any of the documentation provided to the judge before the hearing. Whether the inclusion of the Church of Scientology of California, Inc., within the order dismissing the action *with prejudice* was intentional or the result of oversight, it was error. To the extent that a defendant needs to be protected against the abuse by a plaintiff of his right unilaterally

---

[5] Although there are cases to the contrary, see *Harvey Aluminum, Inc.* v. *American Cyanamid Co.*, 203 F.2d 105, 107-108 (2d Cir.), cert. denied, 345 U.S. 964 (1953), according to "[t]he sounder view and the weight of authority" a defendant may be dismissed even if there are other defendants remaining in the case. 9 Wright & Miller, Federal Practice and Procedure § 2362, at 149-150 (1971).

to dismiss a party *without prejudice,* the "two-dismissal rule" of rule 41(a)(1) provides that protection.[6]

2. The dismissal of the case against the remaining defendants, *with prejudice,* poses greater difficulty. Normally a judge is accorded wide discretion in setting "terms and conditions" when dismissing a case under Mass.R.Civ.P. 41(a)(2). *GAF Corp.* v. *Transamerica Ins. Co.,* 665 F.2d 364, 368 (D.C. Cir. 1981). The question presented here would be whether the attachment of the ultimate condition, prejudice, was called for in the somewhat unusual and confusing circumstances of this case. The test we would apply is whether to have done otherwise would have caused substantial prejudice to the defendants. *Selas Corp.* v. *Wilshire Oil Co.,* 57 F.R.D. 3, 7 (D.C. Pa. 1972). See Wright & Miller, *supra* § 2364, at 196.

In arguing that the action of the judge should be upheld, the defendants rely on a number of factors, no one of which by itself would be sufficient to justify the dismissal *with prejudice.*[7]

---

[6] Rule 41(a)(1) provides in pertinent part: "[A] notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of this or any other state an action based on or including the same claim."

[7] They refer first to the length of time during which the case was pending and the absence of diligence on the part of the plaintiff in bringing it forward. We do not view the delay as so unreasonable as to constitute an abuse, particularly in light of the absence of any effort by the defendants to move the case along. Next, the defendants point to Mr. Flynn's unavailability for the deposition and the timing of the filing of the motion for a voluntary dismissal, on the very day of Mr. Flynn's scheduled deposition. The effort to schedule Mr. Flynn's deposition for that date, however, was the first effort by the defendants in this case to schedule the deposition or to conduct any discovery. Mr. Flynn may not have acted promptly or as courteously as one would have liked in an effort to work out a mutually convenient date but, in the absence of a determination that Mr. Flynn was in fact available for the deposition on September 29, 1983, and that he refused to appear, we do not view the deposition scheduling problem as a sufficient basis for the action taken. The defendants argue further that the action was justified because the allegations in the complaint lacked merit. Yet we note that they were sufficiently meritorious to form the basis for some relief afforded by the Federal District Court in the *Van Schaick* case and for some concessions to be made by counsel for the defendants. The defendants also refer to the expense of the litigation to date as a valid basis for the action taken. The imposition of costs, including counsel fees, as a condition of dis-

"[T]he sanction of dismissal is the most severe sanction that a court may apply, and its use must be tempered by a *careful* exercise of judicial discretion" (emphasis original). *Durham v. Florida East Coast Ry.,* 385 F.2d 366, 368 (5th Cir. 1967). The offer by the plaintiff to pay costs and to enter into a covenant not to sue would appear to satisfy many of the reasonable concerns of the defendants. See *Goldlawr, Inc.* v. *Shubert,* 32 F.R.D. 467 (S.D. N.Y. 1962). It may be, nevertheless, that, considering all of the circumstances together, in light of the complex background of the litigation between the parties, the numerous other cases filed in various courts by these and related parties, the heavy civil caseload of the Superior Court, and the broad discretion accorded to a judge, the determination that dismissal of the action ought to be *with prejudice* fell within the bounds of reasonableness. We would be reluctant to rule otherwise. For another reason, however, it is not necessary for us to make that determination.

3. Even if we were to regard the dismissal *with prejudice* to have been a proper exercise of discretion, we think the judge should have permitted Mr. Flynn to withdraw his motion to dismiss when he sought to do so immediately upon the announcement in open court of the ruling on the motion. The defendants argue that because the denial of the plaintiff's motion to dismiss was one of the three options offered by the judge to counsel at the outset of the hearing, and because counsel did not accept that offer, the plaintiff should have been foreclosed from withdrawing the motion. He had no notice, however, that a possible consequence of his failure to accept

missal, however, ought to have satisfied these interests. Finally, the defendants urge that the action taken was proper because they ought to be allowed to defend themselves in this action and in the forum selected by the plaintiff and not be faced with the same claims at a later time. Mr. Flynn offered assurance that he would not sue these defendants on these claims, and, even if that assurance does not provide complete protection to the defendants, it is not altogether clear why, in fairness, they are entitled to more. (We express no view as to the effect a dismissal *with prejudice* would have on Flynn's Federal District Court case.) Moreover, Mr. Flynn's interest in suing another individual on a broader claim, of which the instant claim is a part, in a different forum is, on the surface at least, a plausible explanation of his desire to have this case dismissed.

that option at the outset of the hearing might be waiver of that option, and it was reasonable for him to avail himself of the opportunity to be heard orally in support of the motion he had filed. It is generally recognized that a plaintiff, having moved to dismiss voluntarily, and being faced with conditions he finds too onerous, may, if he acts promptly, decline to have the action dismissed and go forward on its merits. *Scam Instrument Corp.* v. *Control Data Corp.*, 458 F.2d 885, 889 (7th Cir. 1972). *Yoffe* v. *Keller Indus., Inc.*, 580 F.2d 126, 131 n.13 (5th Cir. 1978), cert. denied, 440 U.S. 915 (1979). *GAF Corp.* v. *Transamerica Ins. Co.*, 665 F.2d at 367-368. Wright & Miller, *supra* § 2366, at 183. 5 Moore's Federal Practice ¶ 41.06, at 41-80 (1984). We are aware that on occasion it has been stated that a plaintiff filing a motion voluntarily to dismiss an action should be prepared to take the consequences, including the possibility that the court might dismiss *with prejudice*. *American Cyanamid Co.* v. *McGhee*, 317 F.2d at 298. Considerations of fairness would seem to require, however, that, except in extraordinary situations, a party should not be penalized for having filed a motion to dismiss. The cases which recognize an option on the part of the moving party, when faced with conditions he finds unacceptable, to fall back to the position of litigating the merits of the controversy in the forum of his original choice appear to be based upon such a concept of fairness. Except to the extent that the defendants are called upon to oppose the motion to dismiss, a consideration which can be satisfied by the imposition of costs, the recognition of such an option leaves the defendants no worse off than they would have been had no such motion been filed. They may still have their day in court.

Accordingly, we reverse the judgment and remand the case to the Superior Court for further proceedings.

*So ordered.*