0810

Ronald L. McPETERS, Respondent v. YEARGIN CONSTRUCTION COMPANY, INC., Appellant.

(350 S. E. (2d) 208)

Court of Appeals

*Donald L. Ferguson,* of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for appellant.*

*James C. Sarratt,* of *Sarratt & Clarke,* Greenville, *for respondent.*

Heard Sept. 23, 1986.

Decided Oct. 20, 1986.

SANDERS, Chief Judge:

Respondent Ronald McPeters brought this action against appellant Yeargin Construction Company alleging the breach of a contract to pay him a bonus in connection with a construction project. The jury returned a verdict for Mr. McPeters. We affirm.

Yeargin undertook to construct a paper mill at Monroeville, Alabama for the Parsons-Whittemore Company. Approximately twelve of the more than eleven hundred people employed in connection with this project were salaried employees. One of the salaried employees was Mr. McPeters. He was required to work four ten-hour weekdays for a total of forty hours per week. He testified he was not required to work overtime and was not compensated for any overtime which he did work.

The project proved to be a troublesome one for Yeargin from the outset. Parsons-Whittemore officials changed work orders frequently and made unreasonable demands. They both added to the amount of work necessary to complete the project and shortened the amount of time available for its completion. The profit which Yeargin stood to receive was directly related to the amount of time it took to complete the project.

At a time when morale among the salaried employees of Yeargin reached a low point, Mr. Carl Yost, director of construction for Yeargin, traveled to Alabama and met with them for the purpose of improving their attitude. Mr. McPeters was among those with whom he met.

One of the salaried employees who was present at the meeting with Mr. Yost testified he said "that if we hung in there, got the job done for the planned profit, that we would be paid a substantial bonus, that we could, roughly six month salary-type bonus." Another of the salaried employees testified Mr. Yost said "if we would just stay with the company, stay on that job and finish it on time, so that Yeargin could collect their fee or make their profit they had figured for that job, that we'd all be able to take a six months vacation." Mr. McPeters testified Mr. Yost said if "we put our — in essence, put our shoulders to the wheel, brought this job in at the anticipated profit, that we could afford to take off for half of a year." Mr. Yost himself testified, "I think I probably said that the maximum bonus anybody could get was six months, equivalent to a half year's salary."

Following this meeting with Mr. Yost, Mr. McPeters continued to work on the project and began to work substantially more than forty hours per week. He testified he did so because of what Mr. Yost had said.

Several Yeargin officials testified the company did not have a specific bonus policy and the payment of any bonuses was strictly discretionary with the company and subject to the final approval of its chairman.

Yeargin eventually received profits greatly in excess of those which it had anticipated on the project, but refused to pay Mr. McPeters a bonus.

I

Yeargin first argues that the trial judge should have granted its motion for a judgment notwithstanding the verdict because there was no evidence of a contract between Yeargin and Mr. McPeters. Specifically, Yeargin argues there was no evidence to establish either the terms of the alleged contract or any consideration on the part of Mr. McPeters. We reject these arguments.

Because this is an appeal from a jury verdict, the evidence and all inferences reasonably deducible therefrom must be viewed in the light most favorable To Mr. McPeters, *J. J. Lawter Plumbing, Inc., v. Wen Chow International Trade and Investment, Inc.,* 286 S. C. 49, 331

S. E. (2d) 789 (Ct. App. 1985). Our review is limited to determining whether there is any evidence reasonably supporting the verdict. *Id.*

An agreement between two or more persons upon ██ sufficient consideration to either do or not do a particular act is a contract. *Benya v. Gamble,* 282 S. C. 624, 321 S. E. (2d) 57 (Ct. App. 1984), *cert. ganted,* 284 S. C. 366, 326 S. E. (2d) 654 (1985), *cert. dismissed,* 285 S. C. 345, 329 S. E. (2d) 768 (1985). In order for a contract to be binding, there must be a mutual manifestation of assent between the parties as to the terms of the contract. *Edens v. Laurel Hill, Inc.,* 271 S. C. 360, 247 S. E. (2d) 434 (1978). Certain terms, such as price, time and place, are considered indispensable and must be set out with reasonable certainty. *Id.* Where a contract does not fix a definite price, there must be a definite method for ascertaining it. *Id.*

Valuable consideration may consist of some right, ██ interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other. *Sanchez v. Tilley,* 285 S. C. 449, 330 S. E. (2d) 319 (Ct. App. 1985).

While the salaried employees varied somewhat in ██ their testimony as to exactly what Mr. Yost told them, the jury could have inferred from their testimony that he said, in essence, if they stayed on the job and brought the project in at the anticipated profit, they would receive a bonus equal to six months salary. Although no specific dollar amount was mentioned for the bonus, the amount was ascertainable based on the salaries of the individual salaried employees, including Mr. McPeters.

We are unpersuaded by the argument of Yeargin that the payment of any bonuses to Mr. McPeters and the other employees was necessarily discretionary. The jury could have rejected the testimony of the Yeargin officials based on the testimony of Mr. McPeters and the other salaried employees who testified as to what Mr. Yost had told them and they made no reference in their testimony to his having said the payment of bonuses would be discretionary.

The jury also could have found that, when Mr. McPeters stayed on the job and worked overtime, he both provided a benefit to Yeargin and undertook a responsibility to himself in response to what Mr. Yost had told him about a bonus.

## II

Yeargin next argues that the trial judge erred in denying four of its requests to charge.

We have reviewed the requests to charge by Yeargin as well as the charge given by the trial judge and find no prejudice as a result of the refusal by the trial judge to charge as requested. *See Brave v. Blakeley*, 250 S. C. 353, 157 S. E. (2d) 726 (1967) (refusal to give a requested charge was not prejudicial error where charges given in the general charge afforded a proper test for determining the issues); *Reid v. Swindler*, 249 S. C. 483, 154 S. E. (2d) 910 (1967) (where a general charge fairly covered the requested charge, refusal to charge as requested was proper); *Priest v. Scott*, 266 S. C. 321, 223 S. E. (2d) 36 (1976) (an alleged error in a portion of a charge must be considered in light of the whole charge and must be prejudicial to the appellant to warrant a new trial).

## III

Yeargin further argues that the trial judge erred in allowing testimony by Mr. Yost as to his opinion that Mr. McPeters was entitled to a bonus.

Counsel for Yeargin allowed Mr. Yost to answer without objection at least two questions eliciting his opinion to the effect that Mr. McPeters was entitled to a bonus. After these questions had been asked and answered, Mr. Yost was asked further what specific recommendation he would have made regarding a bonus for Mr. McPeters. Counsel for Yeargin objected to this question and, when his objection was sustained, moved to strike the previous answers of Mr. Yost. The trial judge refused his motion.

A motion to strike testimony after it has been admitted without objection is addressed to the sound discretion of the trial judge. *Lindsey v. City of Greenville*, 247 S. C. 232, 146 S. E. (2d) 863 (1966).

We find no abuse of discretion by the trial judge under the circumstances.

## IV

Yeargin finally argues that the trial judge erred in denying its motion for a new trial nisi on the ground that the verdict was excessive.

The granting of a new trial nisi on the ground of an excessive verdict is within the discretion of the trial judge whose decision will not be disturbed unless the verdict is wholly unsupported by the evidence. *Lemoine v. Hollingsworth*, 273 S. C. 477, 257 S. E. (2d) 713 (1979). Therefore, the question on appeal is whether the amount of the verdict falls within the range of damages testified to at trial. *Id.*

In this case the jury returned a verdict for $10,000. As previously discussed, there was evidence that the bonus promised Mr. McPeters and the other salaried employees was equivalent to six months salary. Mr. McPeters testified he began working on the project at an annual salary of about $21,000 to $22,000 and eventually earned as much as $23,000. The verdict of the jury was obviously not excessive in view of this evidence.

Affirmed.

SHAW, J., and LITTLEJOHN, Acting J., concur.